IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MARCUS BARBEE, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:19-cv-306 |
| | ) | |
| v. | ) | |
| | ) | |
| MAJOR ANDERSON, *et al.*, | ) | By: Elizabeth K. Dillon |
|     Defendants. | ) | United States District Judge |

**MEMORANDUM OPINION**

Marcus Barbee, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983, naming thirteen defendants: Major Anderson, M. D. Napier, J. L. Thompson, Joseph Ely, B. K. McCray, W. C. Collins, T. L. Spears, M. E. Robinson, Franks, Lt. J. G. Bryant, B. Mullins, C. Morgan, and Warden Manis. Barbee's Complaint asserts that he was subjected to the use of excessive force in violation of his Eighth Amendment rights, he was denied proper medical care in violation of his Eighth Amendment rights, he was denied due process in violation of the Fourteenth Amendment, and he was subject to assault and battery.

Defendants filed motions for summary judgment (Dkt. 37, 66 & 69) that are ripe for disposition. Upon review of the record, the court concludes that Defendants' motions for summary judgment should be granted.

I.   BACKGROUND

Barbee is a Virginia inmate currently housed at Red Onion State Prison ("Red Onion"). At the time of the events at issue in this lawsuit, he was housed at Wallens Ridge State Prison ("Wallens Ridge"). According to Barbee's verified complaint, on January 16, 2019, Barbee dropped his pill cup on the floor during pill pass. Am. Compl., Dkt. 8, ¶¶ 11–12. Corrections Officer J. L. Thompson told Barbee to step into the sally port, and Barbee walked to the exit door

of the pod day room and put his back against the right side wall beside the door. *Id.* ¶¶ 11–17. Corrections Sargent M. D. Napier slammed Barbee to the ground and punched his right eye. *Id.* ¶ 18. Officer J. L. Thompson hit Barbee in his right kidney area. *Id.* ¶ 19. The officers called for back up, and Corrections K-9 Officer T. Spears, Corrections Officer W. C. Collins, Corrections Officer M. E. Robinson, Corrections Lieutenant J. G. Bryant, Unit Manager Joseph Ely and "many more officers" responded to the call. *Id.* ¶ 21. The officers stood strategically to block the camera's view, while Officer Napier punched and choked Barbee until he blacked out, stating "Nigger I'ma kill you." *Id.* ¶ 22. Barbee awoke with Officer Spears' K-9 engaged on his right leg and Corrections Sargent B. K. McCray and Officer Collins holding his left leg and arms. *Id.* ¶ 23. Barbee was "snatched to his feet" and taken into the sally port by Sargent McCray and Officer Collins, who then rammed Barbee's head into the wall and struck Barbee in his right jaw with a closed fist. *Id* ¶ 24. Barbee asserts that Lieutenant Bryant took no action to stop the assault. *Id.*

Barbee was placed in a triage room in the medical housing building. *Id.* ¶ 25. Joseph Ely and an unknown corrections officer recorded statements with a video camera. *Id.* Doctor B. Mullins entered the triage room, looked at Barbee's right leg injuries, and left the room. *Id.* ¶ 26. Nurse C. Morgan took pictures of Barbee's leg, wrapped his leg without cleaning the wound, and left the room stating, "don't hurt him to [sic] bad." *Id.* ¶ 27. Defendant Major Anderson and Sargent John Doe entered the room, Sargent John Doe hit Barbee multiple times in the abdomen and Major Anderson held Barbee to stop him from hitting the ground. *Id.* ¶¶ 28–29. Sargent John Doe made statements including "you done fucked up now coon," and "Fucking nigger put your hands on my officers Ima kill you." *Id.* ¶¶ 28–30. Major Anderson began laughing, said "that's enough," and left the room. *Id.* ¶ 31. Unit Manager Ely entered the room, punched

2

Barbee in the left eye, stating, "this is how we do it in the West boy," and left. *Id.* ¶ 32.

Barbee was placed in a five-point restraint bed, which was tightened so that he lost circulation in his hands and legs, and was cut out of his clothes. *Id.* ¶ 33. Barbee reported to Major Anderson that his arms were numb up to his shoulders and he could not feel his feet, to which Major Anderson replied, "who gives a shit you nigger I hope they fall off and I'm gonna make sure your [sic] charged with attempted murder you stupid son of a bitch." *Id.* ¶ 34.

Barbee was transported to Red Onion, where he was taken to the medical building around 9:15 a.m. *Id.* ¶ 36. Nurse Anderson and a "Intell Officer" took pictures of his legs at all angles, cleaned his dog bite wounds, and wrapped his leg. *Id.* ¶ 39. Hearing Officer Franks led Barbee to his room. Officer Franks incorrectly reported that Barbee refused his breakfast and dinner trays, which Barbee reported to Captain Franklin. *Id.* ¶¶ 39–40. Officer Franks refused to give Barbee his food trays for breakfast, noon, lunch, and dinner on January 17, 2019, despite Barbee's request for his food. *Id.* ¶ 41.

Barbee was served with six disciplinary charges on January 17, 2019, for the events that occurred the day before at Wallens Ridge. *Id.* ¶ 42. Officer Franks presided over Barbee's disciplinary hearing on January 30, 2019. *Id.* ¶¶ 42–44. Officer Franks stated that he saw Officers Napier and Thompson doing "something, but I'm still going to find you guilty on all charges." *Id.* ¶ 47. Barbee was placed in long-term segregation. *Id.* ¶ 61. Barbee's wounds were infected and painful, and his dressings needed to be changed every day. *Id.* ¶ 48. Barbee's leg dressing was not changed between February 5 through 11, 2019, and it was soaked in blood and infection. *Id.* ¶ 51.

On February 28, 2019, Barbee asked Nurse Mullins to change his leg bandages and she refused. *Id.* ¶¶ 53–54. Corrections Officer Combs later told Barbee that the nurse's last name

3

was Yates. *Id.* ¶ 55. On March 18, 2019, Barbee saw an eye doctor and was told that his right eye was beaten severely, had partially detached from the tissue, and had lost 25% of the vision. *Id.* ¶ 57.

On January 18, 2019, Barbee submitted two informal complaints to Wallens Ridge through institutional mail reporting his assault, asking to preserve the video footage of the assault, and asking to preserve pictures of his face and right leg injuries. *Id.* ¶¶ 49–50. On February 20, 2019, Barbee "put in grievances to Wallens Ridge Prison on not getting a response back from my informal complaints that I mailed and had faxed to the prison unit head." *Id.* ¶ 52. Barbee filed an "administrative appeal" with Warden Manis of Wallens Ridge, received his paperwork back on April 1, 2019, and "sent it to next step, even though I sent my first appeal in on February 5, 2019, over a month late." *Id.* ¶ 63. Barbee alleges that he filed a grievance about the use of excessive force by T. Spears, M. Napier, and J. Thompson and received no response. *Id.* ¶ 65. Barbee asserts that he exhausted all of his administrative remedies with respect to all claims and all defendants. *Id.* ¶ 64. Barbee provided copies of informal complaints dated January 18, 2019 (*id.* at pp. 21 & 22), February 14, 2019 (*id.* at pp. 23 & 24), and February 28, 2019 (*id*. pp. 25 & 26).

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). In making that determination, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party."

*Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990) (quoting *Anderson*, 477 U.S. at 249–50).

### III.   DISCUSSION

**A.  Exhaustion**

Defendants argue that Barbee failed to properly exhaust the available administrative remedies as to his claims for excessive force and denial of proper medical care. Having reviewed the record, the court agrees and will grant the motions for summary judgment as to Barbee's Eighth Amendment claims.

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). A prisoner must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy, or effective, *Porter*, 534 U.S. at 524, and even if exhaustion would be futile

because those remedies would not provide the relief the inmate seeks. *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005). Failure to exhaust all levels of administrative review is not proper exhaustion and will bar an inmate's § 1983 action. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006). Further, to comply with § 1997e(a), an inmate must follow each step of the established grievance procedure that the facility provides to prisoners and meet all deadlines within that procedure before filing his § 1983 action. *See id.* at 90-94 (finding inmate's untimely grievance was not "proper exhaustion" of available administrative remedies under § 1997e(a)).

Here, Virginia Department of Corrections ("VDOC") Operating Procedure (OP) § 866.1 is the mechanism used to resolve inmate complaints and requires that, before submitting a formal grievance, an inmate must demonstrate that he has made a good faith effort to resolve a grievance informally through the procedures available at the institution to secure institutional services or resolve complaints. This may be accomplished by submitting an Informal Complaint form to the Grievance Department at the appropriate institution. The Informal Complaint is then forwarded to the appropriate staff for investigation and response. Prison staff should respond to an inmate's Informal Complaint within 15 calendar days. If the inmate is dissatisfied with the response to the Informal Complaint, or if fifteen days have passed from the date the informal complaint was logged without the inmate receiving a response, he may submit a regular grievance on the issue.

If the informal resolution effort fails, the inmate must initiate a regular grievance by filling out the standard "Regular Grievance" form. Prior to review of the substance of a regular grievance, prison officials conduct an "intake" review of the grievance to assure that it meets the published criteria for acceptance. Among other requirements, a regular grievance may only contain one issue and generally must be submitted within thirty days from the date of the

6

occurrence or incident. A grievance meeting the criteria for acceptance is logged in on the day it is received. If the grievance does not meet the criteria for acceptance, prison officials complete the "intake" section of the grievance and return the grievance to the inmate. If the inmate desires a review of the intake decision, he must send the grievance form to the Regional Ombudsman.

An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Further, the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Defendants argue that Barbee did not properly exhaust the available administrative remedies regarding his Eighth Amendment claims because he submitted informal complaints but did not initiate a regular grievance that was accepted into the grievance process and appealed through the highest eligible level.

Barbee asserts that he filed informal complaints on January 18, 2019, February 10, 2018, February 20, 2019, and February 28, 2019, for denial of medical care, assault and battery, and cruel and unusual punishment, to which he never received a response. Barbee Aff., Dkt. 47 at p. 1. Barbee provided copies of these informal complaints to the court. Dkt. 8 at pp. 21–26, Dkt. 47-1. Barbee set forth his exhaustion efforts in detail in a Declaration submitted to this court, which lists the multiple informal complaints he filed, as well as letters he sent to the director of the VDOC and to the Western District Administrators Office expressing his concerns of retaliation and his failure to receive responses to his informal complaints. Dkt. 50. Barbee states

that he did not receive a "grievance receipt" for any of the informal complaints he filed relating to the facts of this case.[1] *Id.*

Defendants' records reflect that Barbee submitted two identical informal complaints in February 2019 relating to his need for medical attention, but no regular grievances were submitted relating to the facts in this case. Ravizee Aff., Dkt. 38-1, pp 20–21. Likewise, Barbee does not assert that he filed a regular grievance after failing to receive a response to his informal complaints. Dkt. 50.

Barbee's Eighth Amendment claims that he was denied proper medical care and subjected to the use of excessive force are grievable issues that must be exhausted through the internal grievance procedure. *See* OP § 866.1, Offender Grievance Procedure (M)(1), Dkt. 38-1 at p. 10. Barbee's failure to exhaust all levels of administrative review is not proper exhaustion and bars his § 1983 action. *See Green v. Adams*, No. 3:10cv13, 2010 WL 5071544, at *6 (W.D. Va. Dec. 9, 2010) (inmates who submitted informal complaints but did not submit regular grievances failed to exhaust all available administrative remedies); *Grimes v. Com. of Virginia*, No. 7:05cv36, 2006 WL 197113, at *7 (W.D. Va. Jan. 24, 2006) (finding that inmate did not exhaust administrative remedies, stating "[w]hether or not plaintiff filed informal complaints…is of no import. The issue is whether Grimes filed an acceptable regular grievance form regarding the September 6, 2004 incident."), *Report and Recommendation adopted*, 2006 WL 4910244 (W.D. Va. Feb. 7, 2006), *aff'd*, 206 F. App'x 241 (4th Cir. Nov. 15, 2006).

---

[1] In one of his affidavits, Barbee states that he had "several people to phone up to red onion prison because nurses at red onion had not changed the dressing on my leg for 3 days since 1-8-19 and that was the only way to get my leg seen to that incident had nothing to do with Wallens Ridge Prison or this civil suit. On February 11, 2019, I received 2 things 1 was a grievance receipt for the complaint that was filed for me and one was the Informal Complaint Warden J. Kiser fixed that problem accordingly and I filed nothing more to that." Affidavit, Dkt. 48, p. 1.

Barbee asserts that he was prevented from availing himself of the grievance procedure because he never received a response to his informal complaints.[2] Dkt. 49. However, under OP §866.1, in the absence of a timely response to an informal complaint, an offender may submit a regular grievance on the issue and attach the informal complaint receipt. Messer Aff., ¶ 6, Dkt. 38-2. Barbee does not allege that he filed a regular grievance and provides no other evidence of defects in the administrative exhaustion process or action or inaction of prison officials that prevented him from filing a regular grievance. Further, Barbee was aware of the grievance procedure, as the record reflects that he utilized the grievance procedures prior to the incident at issue in this case. *See* Offender Grievance Report, Dkt. 38-2, pp. 21–31. Barbee did not utilize the internal grievance procedure to exhaust his claims of excessive force and denial of proper medical care; thus, the court will grant Defendants' motions for summary judgment as to these claims.

**B. Fourteenth Amendment Due Process Claim**

Barbee alleges that his confinement in segregation following the disciplinary hearing with Officer Franks violated his due process rights under the Fourteenth Amendment. Defendants assert that Barbee fails to state a due process claim because his placement in segregation was not an atypical and significant hardship in relation to the ordinary incidents of prison life.

---

[2] Barbee does not have a constitutionally protected right to a grievance procedure, and prison officials' failure to respond to his informal complaints does not state a constitutional claim. *See Adams v. Rice*, 40 F. 3d 72, 75 (4th Cir. 1994) ("the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (Because a state grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the state's grievance procedure is not actionable under § 1983); *Phillips v. Pocahontas State Corr. Ctr.*, No. 7:09cv98, 2009 WL 890475, at *4 (W.D. Va. March 31, 2009) ("prison officials' failure to respond to grievances in the manner that [the inmate] believes appropriate…does not state any claim of constitutional significance"); *Skipper v. SWVRJ*, No. 7:06cv725, 2006 WL 3716788, at *3 (W.D. Va. Dec. 14, 2006) ("any delay or failure to respond to or process [the inmate's] complaints does not raise a claim of constitutional magnitude").

"To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). For an inmate to establish a constitutionally protected liberty or property interest requires a showing of an "atypical and significant" hardship or deprivation in relation to the ordinary incidents of prison life. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (holding that disciplinary segregation did not present the type of atypical, significant deprivation that would give rise to a protected liberty interest).

Confinement in segregation by itself does not trigger due process protections. Mere limitations on privileges, property, and activities for administratively segregated inmates "fall[ ] within the expected perimeters of the sentence imposed by a court of law." *Sandin*, 515 U.S. at 485; *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991) (holding that "changes in a prisoners' [sic] location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges—matters which every prisoner can anticipate are contemplated by his original sentence to prison—are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage the prisons safely and efficiently"). It is well established that a temporary assignment to segregated confinement—even six months or more, with reduced privileges, few out-of-cell activities or socialization opportunities, and heightened security measures—is *not* atypical or significant hardship. *See Sandin*, 515 U.S. at 485–86 (finding that 30 days in such conditions did not trigger protected liberty interest); *Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997) (finding six months under conditions dictated by administrative segregation policies was not atypical under *Sandin*); *Barksdale v. Clarke*, No. 7:16cv355, 2017 WL 3381370, at *7

(W.D. Va. Aug. 4, 2017) (finding that the conditions of Level S at Red Onion do not constitute an atypical and significant hardship compared to the ordinary incidents of prison life) (internal quotations omitted); *Hubbert v. Washington*, 7:14-cv-530, 2017 WL 1091943, at *5–7 (W.D. Va., Mar. 22, 2017) (finding that the conditions of confinement in segregation do not constitute an atypical and significant hardship compared to the ordinary incidents of prison life). Thus, the court concludes that Barbee had no constitutionally protected liberty interest in avoiding classification to segregation.

Defendants further argue that even if Barbee identified a deprivation of a protected liberty interest, he does not demonstrate denial of due process because he was afforded a disciplinary hearing and had access to the disciplinary appeal process. The court agrees.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Instead, the inmate must receive: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563–67)).

Barbee asserts that he was served with six disciplinary charges at 10:46 a.m. on January 17, 2019. Am. Compl., Dkt. 8, ¶ 42. Barbee's disciplinary hearing was originally set for January 25, 2019, and was continued to January 30, 2019. *Id.* ¶ 42. During Barbee's disciplinary hearing, Officer Franks reviewed video footage and found Barbee guilty on all six disciplinary charges. *Id.* ¶¶ 44–47. Barbee does not allege any specific due process violation related to his

11

disciplinary proceeding, and the court finds none upon review. For all of these reasons, the court will grant Defendants' summary judgment motion as to Barbee's due process claim.

**C. State Law Assault and Battery Claim**

The court has determined that Barbee's federal claims must be dismissed; thus, the court declines to exercise supplemental jurisdiction over Barbee's state law assault and battery claim pursuant to 28 U.S.C. § 1367(c)(2), and it will be dismissed without prejudice.

IV. CONCLUSION

For the reasons stated herein, Defendants' motions for summary judgment are granted. An appropriate order will be entered.

Entered: March 12, 2020.

*/s/ Elizabeth K. Dillon*
       Elizabeth K. Dillon
       United States District Judge